## Amos W. Walker, Administrator, Appellant, v. Michael Montgomery et al., Appellees.

DECREE—*when set aside as against the evidence.* A decree which is manifestly against the weight of the evidence will be set aside on review.

Creditor's bill. Appeal from the Circuit Court of Shelby county; the Hon. SAMUEL L. DWIGHT, Judge, presiding. Heard in this court at the November term, 1907. Affirmed in part and reversed in part, with directions. Opinion filed April 21, 1908.

E. J. MILLER, for appellant.

GEORGE B. RHOADS and W. C. KELLEY, for appellees.

MR. JUSTICE RAMSAY delivered the opinion of the court.

Amos W. Walker, as administrator of the estate of Joseph Walker, deceased, filed a creditor's bill to the November term, 1904, of the Circuit Court of Shelby county, to set aside certain conveyances and sales made by Michael Montgomery to different ones of the appellees, in November, 1900, upon the alleged ground that such conveyances and sales were fraudulent and without consideration and void as to two judgments of said administrator, in which said bill it was prayed that such sales and conveyances be set aside and the property involved be subjected to sale under executions upon said two judgments in the Circuit Court of Shelby county, rendered on the 18th day of December, 1902, both in favor of such administrator, one against Michael Montgomery in the sum of $928.35 and the other against Michael Montgomery and one G. A. Edwards in the sum of $1,822.53. There was a decree against said administrator, dismissing his bill and further praying that if upon a hearing such deeds or any of them could not be set aside because transfer was made to an innocent party, that a personal decree

might be rendered, etc. There was a decree against the administrator dismissing his bill for want of equity as to all the defendants named in his bill and this appeal followed.

Appellant, in his argument, makes no claim of error in the action of the trial court in dismissing his bill, except so far as it relates to the charges against Samuel F. Wilson, A. C. Crays and T. F. Dove, and as the interests of these three parties are separate and distinct from one another we will treat and dispose of them separately.

The evidence shows that in November, 1900, the judgment debtor, Michael Montgomery, sold to Samuel T. Wilson a drug stock in the town of Windsor, Illinois, for the agreed sum of $2,500, of which Wilson at once took possession and has ever since that time retained control. Appellant claims that he had suits against the debtor then pending upon which he afterward obtained the judgments hereinbefore described and that the transfer from the debtor to Wilson was fraudulent in fact and void as to him as a creditor.

While there are some circumstances connected with the sale from Montgomery to Wilson not altogether free from suspicion, yet there is in the record absolutely no evidence that shows or even tends to show that Wilson knew of any indebtedness from Montgomery to appellant at the time of the sale, or that he knew that Montgomery was unable to pay his debts, or that the transfer was made by Montgomery to defeat his creditors. The drug stock when sold seems to have been an old one, having in it a large quantity of stale and unsalable goods and while it may have been inventoried some weeks before the sale at $4,500 there is no evidence to show what its actual value was at the time of the sale. It is true that Voris, the agent of Montgomery, testified that he told Wilson the stock was worth $3,500 and that its purchase by him would be a "snap," yet this is only the expression of an opinion as to the value by one having an interest in

making a sale and was not even claimed to be the opinion of one who stated a value upon a careful examination. Furthermore, the evidence shows that Wilson was a registered pharmacist and in the drug business and that Montgomery offered the stock to others at the same price that Wilson in fact paid for it; that Wilson refused to buy the stock until provision was made for the payment of all unpaid bills against the stock and that when he inquired why the stock was being sold was told by Voris that Montgomery wanted to get out of business. Since the sale Wilson has been in the full and undisputed possession and control of the stock and Montgomery has had nothing whatever to do with it. Under such a showing it would seem clear that no decree could have been made as to Wilson's interest other than the one rendered.

So far as the controversy relates to the interest of Crays the facts are these: Crays was anxious to buy a house and lot in Windsor which Michael Montgomery owned or had owned and to which Dove had the title. On November 24, 1902, a warranty deed was made by Dove and wife to Crays for the lot in consideration of $1,550 paid by Crays to Dove. During the time Crays was negotiating for the purchase of the house and lot he met appellant on the street in Windsor and asked him about the title to the property. Appellant then said there was litigation pending that would affect the title. Crays claims that he understood Walker to say in addition: "Go ahead and buy it and I will cause you no trouble," while Walker contends that what he said was: "If Crays would allow a default to pass against him in the pending suit and would then hold Dove on his warranty deed I would not disturb him (Crays) in the property." Shortly after that time Walker made and delivered to Crays a statement in writing in the words and figures following:

"Whereas, there is pending in the Circuit Court of the county of Shelby and State of Illinois, a case en-

titled Amos W. Walker v. T. F. Dove, A. C. Crays and others; and whereas, I, Amos W. Walker, the plaintiff in this case, desire to protect A. C. Crays against any loss by reason of the above entitled suit; and whereas, I have stated to A. C. Crays verbally at the time suit was entered, and also at the time Crays purchased lots seven and eight in block five, Bruce, Voris & Middleworth Ad. to Windsor, Ills., of T. F. Dove, that I would protect him against loss, and I desire to reduce the same to writing and for and in consideration of a valuable consideration I hereby agree to release any judgments obtained against said A. C. Crays by reason of said suit. I bind myself, my heirs, administrators or assigns to fulfill the above obligation.

Witness my hand and seal this 12th day of April, 1904.

Amos W. Walker.      (Seal.)"

This instrument tends to corroborate the testimony of Crays to the effect that Walker stated to Crays verbally at the time suit was entered and also at the time Crays bought the property that he (Walker) would protect him against loss.

It is evident that Crays bought the property relying upon Walker's statement that he would not interfere with the purchase and it would be most inequitable now to permit appellant to disturb such a right and drive Crays to a defense of that title or purchase with which he agreed not to interfere when Crays bought the property.

The situation so far as it relates to Dove was very different from that relating to the other appellees. The evidence is clear to the effect that Montgomery was anxious and determined to defeat Walker in the collection of his claim. To this end he disposed or attempted to dispose of all his property and holdings within a very few days and filed or had filed for record five deeds or bills of sale at the same hour on November 23, 1900, two of which ran to Dove himself. The claims of appellant against Montgomery, now in

dispute, had been in litigation in some form in the Circuit Court of Shelby county for several years prior to November, 1900, in which court Dove was at the time a practicing lawyer. One of the five conveyances above referred to, in the making of which fraud is specifically charged, was a deed made by Montgomery to Dove for 160 acres of land near Windsor for $2,000 subject to a mortgage of $4,500 and some unpaid taxes.

The undisputed evidence shows that at the time of the transfer from Montgomery to Dove this land was worth $9,600 and that it was sold by Dove for over $9,000 to one Samuel M. Buoy within ninety days after he acquired title from Montgomery. This difference between the price paid by Dove and the actual value of the farm was too great not to arouse the suspicion of Dove as to the motive prompting the sale and was sufficient notice to put Dove upon inquiry.

The evidence further shows that while Crays was negotiating for the purchase of the house and lot in Windsor, the title to which was in Dove's name, A. T. Collison had a conversation with Dove in respect to the property in which Collison said he came to see him about buying the property, when Dove replied: "See Montgomery about it."

The evidence also tends to show that at the time of the making of the deed to the 160-acre farm by Montgomery to Dove there was a crop of broomcorn on the farm which was received by Dove and by him in no way accounted for. Dove did not testify or offer to explain his connection with the transfer of the farm and his silence under the circumstances strengthens the conviction that the conveyance of the farm by Montgomery to Dove was merely colorable and made to defeat the appellant.

Dove contends, however, that no decree can pass in Walker's favor as administrator upon the ground that the evidence shows, as he claims, that appellant as administrator of the estate of Joseph Walker, deceased, had been discharged by order of the county court prior

to the time he filed his bill. This contention cannot avail Dove in this proceeding. When the judgment at law was rendered against Michael Montgomery it was rendered in favor of appellant as administrator. The judgment itself fixed the status of the parties to it and determined the capacity in which appellant's recovery was had. Under it he, as administrator, had a right to enforce collection and to issue execution in the name in which recovery had been allowed.

We hold that Dove was not a purchaser in good faith from Montgomery but took title to the 160-acre farm with notice of the purpose upon the part of Montgomery to defeat Walker in the collection of his debt and that he, Dove, should therefore be held to account to appellant for the sum remaining, after deducting from the amount received by Dove upon the sale to Buoys the $2,000 Dove paid for the land added to the amount due on the $4,500 mortgage when he accepted the deed from Montgomery and the taxes unpaid on the land when such deed was made, so far as the same shall be required to pay appellant's judgments and costs.

The decree is affirmed as to all of the appellees except Dove and as to Dove it is reversed with direction to enter a decree in appellant's favor and against Dove in conformity to the holdings announced herein.

*Affirmed in part and reversed in part with directions.*